S INDUSTRIES, INC., a Delaware
Corporation, Plaintiff,

v.

DIAMOND MULTIMEDIA SYSTEMS, INC., d/b/a/ Diamond Computer Systems, Inc., Micron Electronic, Inc., Zeos, Computer City, Inc., Comp USA, Elek–Tek, Circuit City, Best Buy, and Egghead Software, Defendants.

No. 96 C 3389.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 20, 1998.

John Valas, Chicago, IL, for S Industries, Inc.

Andrew P. Bridges, Sara Harrington, Diane E. Turriff, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, David C. Hilliard, John Thompson Brown, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for Diamond Multimedia Systems, Inc., Micron Electronics, Inc., Computer City, Compusa, Elektek, Circuit City, Best Buy and Egghead Software.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

Plaintiff, S Industries, claims the right to use the mark STEALTH in connection with computers and computer related goods. S Industries contends that defendants are infringing this trademark by using the STEALTH mark for computer video and graphics boards. Defendants move for summary judgment on all counts of plaintiff's second amended complaint. Plaintiff also moves for summary judgement on Counts I–III and V–VI of its second amended complaint. For the following reasons, defendants' motion is granted and plaintiff's motion is denied.

### BACKGROUND

The following facts are undisputed unless otherwise noted.

#### I. The Parties

##### A. S Industries

Since 1981, S Industries, its predecessors in interest, and related companies have used the mark STEALTH in connection with various consumer goods. Leo Stoller is the current president, CEO and sole shareholder of S Industries, Sentra Industries, Inc. and Stealth Industries, and the sole owner and sole proprietor of Sentra Sporting U.S.A. Co. and Rent–A–Mark. (Stoller Aff., ¶ 1). S Industries owns or is the exclusive licensee for the following federal trademark registrations:

| Mark | Registration No. | Goods |
| --- | --- | --- |
| STEALTH | 2,025,156 | metal alloys for use in sporting goods, transportation, and window locks |
| THE STEALTH | 2,024,889 | lawn sprinklers |
| STEALTH SQUAD | 2,007,348 | comic books |
| STEALTH | 1,867,087 | pool cues, pool tables, darts, billiard balls; cue cases; cue rack and billiard gloves |
| STEALTH | 1,717,010 | microwave absorbing automobile paint |
| STEALTH | 1,766,806 | fishing tackle floats |
| STEALTH | 1,434,642 | bicycles, motorcycles and boats |
| STEALTH | 1,332,378 | sporting goods, specifically, tennis rackets, golf clubs, tennis balls, basket balls, baseballs, soccer balls, golf balls, cross bows, tennis racket strings and shuttlecocks. |

On June 11, 1990, Stealth Industries applied to register the mark STEALTH for "computer printers, disk drives, monitors, keyboards and disc storage containers" with the United States Patent and Trademark Office (the "PTO"). The application lists January 1985 as the date of first use. Because Stealth Industries failed to respond to a January 4, 1991 office action and did not furnish the required specimens of use, the PTO deemed the application abandoned. On January 10, 1992, Stealth Industries petitioned to revive its abandoned trademark application. The petition explained Stealth Industries' inaction and stated that its then president, Chris Stoller, suffered from memory loss and was unable to function properly due to defective medication. The PTO denied the petition stating that "the inability of the president to function does not constitute unavoidable delay" sufficient to revive the abandoned petition.

On November 13, 1995, S Industries again applied to register the mark STEALTH for "computers; dot matrix printers; computer disc drives, fax modem cards; computer monitors, computer keyboards, computer diskette storage containers, computer software for computer setup and data base files, blank video films and video tapes; safety goggles, radios, photographic and video cameras; [and] compressed air cylinders for use with breathing apparatus." The application listed January 1985 as the date of first use. On March 18, 1996, the PTO refused to register the mark. The office action stated that a likelihood of confusion existed with prior applications for the mark STEALTH used in connection with computers and computer related goods and listed various technical problems with the application. One of the prior applications cited by the PTO was filed by defendant Diamond Computer Systems, Inc. ("Diamond").

Currently, S Industries owns no federal trademark registration for the mark STEALTH in connection with computers or computer related goods. S Industries, however, claims to have acquired common law rights in the mark based on its alleged prior and continuous use of the mark since 1985.

## B. Defendants

Since at least 1991, defendant Diamond has manufactured and sold a line of video and graphics computer boards bearing the STEALTH mark. The boards are printed circuit boards that are physically installed in a personal computer, enabling the user to display video and graphics. Diamond has sold "millions" of its STEALTH boards and has earned over $800 million in revenues from these sales. Defendants Micron Electronic, Inc., Zeos, Computer City, Inc., COMPUSA, Elek–Tek, Circuit City, Best Buy and Egghead Software sell and advertise Diamond's STEALTH video and graphics computer boards across the United States.

On October 18, 1993, Diamond applied to register its STEALTH mark for "accessory circuit boards of personal computers to display video graphics" based on its actual use of the mark beginning in October 1990. In 1994, Stealth Industries, Inc., Leo Stoller d/b/a Stealth, Leo Stoller d/b/a Sentra Sporting Goods and S Industries filed an opposition with the PTO challenging Diamond's right to register the STEALTH mark. In 1995, Leo Stoller, on behalf of Stealth Industries, filed an amended opposition against Diamond's application. The PTO's Trial and Trademark Appeal Board stayed S Industries' opposition, and thus the disposition of Diamond's application, pending the resolution of this lawsuit.

## II. The Lawsuit

On June 5, 1996, plaintiff filed suit against Diamond, Micron Electronic, Inc., Zeos, Computer City, Inc., COMPUSA, Elek–Tek, Circuit City, Best Buy and Egghead Software (collectively the "defendants"). Defendant Zeos has not been served because plaintiff discovered that it is a division of defendant Micron. (Pl.Resp. and Cross Mo. for S.J., p. 1).

Plaintiff filed its second amended complaint on March 26, 1997, bringing claims under the Lanham Act for infringement of a registered mark (Count I), false designation of origin (Count II), unfair competition (Count III) and dilution (Count IV). Addi-

tionally, plaintiff alleges state law claims under the Illinois Consumer Fraud and Deceptive Trade Practices Act and the Illinois Uniform Deceptive Trade Practices Act (Count V) and the Illinois Counterfeit Trademark Act (Count VI).

The parties initiated the first round of discovery in January 1997. Defendants sought to discover plaintiff's proof supporting its claim of prior, continuous use of the STEALTH mark on computers and computer related products. At the February 11, 1997 status conference, plaintiff agreed to provide the requested documents. The responsive documents produced the instant cross motions for summary judgment.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 932 (7th Cir.1994). The moving party bears the burden of demonstrating an absence of evidence to support the position of the nonmoving party, *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 442–43 (7th Cir.1994), and all reasonable inferences are drawn in favor of the party opposing the motion. *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994). The Court, however, is "not required to draw every conceivable inference from the record [in favor of the non-movant]—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). To avert summary judgment the plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-movant cannot rely solely on its pleadings and must come forth with evidence showing that a genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In making its determination, the court's sole function is to determine "whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). Credibility determinations and weighing evidence are jury functions, not those of a judge when deciding a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Even though the parties have filed cross motions for summary judgement, it does not mean that summary judgment must be entered for one side. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.1983), *cert. denied*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983); *Intermatic Inc. v. Toeppen*, 947 F.Supp. 1227, 1232 (N.D.Ill.1996). The court must still assess whether a material fact questions exists. *Id.*

The parties do not dispute that Diamond uses STEALTH as a brand name for its video and graphics computer boards or that the other defendants sell Diamond's STEALTH boards. Rather, plaintiff argues that "it is clear beyond reasonable dispute" that plaintiff has continuously used the STEALTH mark for computers and computer related products since 1985. (Pl.Resp. and Cross Mo. for S.J., p. 7). Thus, plaintiff claims that "it is clear beyond reasonable dispute that [defendants'] concurrent uses [of the STEALTH mark] are likely to cause confusion, or to cause mistake or to deceive." (*Id.*) Defendants claim that plaintiff's evidence fails, as a matter of law, to establish that plaintiff has prior common law or federal trademark rights to the STEALTH mark in connection with computers and computer related goods.

### II. Count I: Infringement of a Registered Mark Under The Lanham Act

In Count I, plaintiff claims that defendants' use of the STEALTH mark infringes its federal trademark registrations for STEALTH. Defendants argue that the plaintiff's registrations do not cover computers and computer related goods. We agree with defendants.

■ To prove infringement of a registered mark under the Lanham Act, 15 U.S.C. § 1114, S Industries must show that: (1) its marks are registered; (2) the marks were used in commerce by the defendants without S Industries' consent; and (3) defendants' unauthorized use is likely to cause confusion, mistake or deceive the public. *See Dunkin' Donuts, Inc. v. Towns Family, Inc.*, No. 95 C 3666, 1996 WL 328018, *2 (N.D.Ill.1996). Plaintiff owns federal registrations for the mark STEALTH. Defendants use the mark STEALTH. Thus, the issue is whether defendants' use causes consumer confusion, deception or mistake.

■ Plaintiff does not own a trademark registration for the mark STEALTH in connection with computers or any kind of electronic technology. However, "[m]odern trademark law prohibits use of a senior user's mark not only on products that are in direct competition with those of the senior user but also on products that are considered to be 'closely related' to the senior user's." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir.1992), *cert. denied*, 507 U.S. 1042, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). "A 'closely related' product is one 'which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner.'" *Id.* (citations omitted). A senior user is protected against the use of confusingly similar marks on closely related goods so that the senior user may enter markets in which it does not now trade, but into which it might reasonably be expected to expand in the future. *Id.* For example, the use of the mark THIRST–AID on an isotonic beverage infringed the mark THIRST–AID registered for soft drinks, syrups, and toppings and sauces used in making ice cream. *Id.* at 958–959. *See also International Kennel Club v. Mighty Star Inc.*, 846 F.2d 1079, 1089–1090 (7th Cir.1988) (use of INTERNATIONAL KENNEL CLUB mark on toy dogs likely to cause confusion as to source with International Kennel Club of Chicago's rights to the mark for sponsoring dog shows); *James Burrough Ltd. v. Sign of the Beefeater. Inc.*, 540 F.2d 266, 273 (7th Cir. 1976) (SIGN OF THE BEEFEATER restaurants creates likelihood of confusion with BEEFEATER registered for gin).

■ That said, trademark registrations do not grant rights in a vacuum. *Zeocrystal Indus., Inc. v. Fox Broad. Co.*, 923 F.Supp. 132, 133 (N.D.Ill.1996). The goods registered by plaintiff such as metal alloys, sporting equipment, paint, comic books, motorcycles, bicycles, boats and lawn sprinklers are not even remotely related to computers or computer related goods. Plaintiff has offered no support for its claim that confusion will occur, and we do not believe that consumers will reasonably be confused between STEALTH lawn sprinklers and STEALTH video and graphics computer boards. Accordingly, we find as a matter of law that the goods in plaintiff's registrations are so unrelated to Diamond's computer video and graphics computer boards that defendants' use of STEALTH cannot infringe plaintiff's registered STEALTH marks. Summary judgment is granted in defendants' favor on Count I.

### III. Counts II and III: Unfair Competition Under The Lanham Act

Section 1125(a) of the Lanham Act prohibits a broader range of practices than does § 1114 which applies only to registered marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Section 1125(a) provides relief for various categories of unfair competition such as false designation of origin which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activity by another person." In effect, § 1125 is the federal codification of traditional common law trademark rights.

■ Plaintiff brings two counts under this section of the Lanham Act, one for "unfair competition" and one for "false designation of origin." For both Counts II and III, S Industries must show that it has prior, protectable rights in the STEALTH mark for com-

puters and computer related goods and that defendants' use of the mark is likely to cause consumer confusion, deception, or mistake. *See* 15 U.S.C. § 1125(a); *Dunn v. Gull,* 990 F.2d 348, 351 (7th Cir.1993). Defendants do not address likelihood of confusion in their motion for summary judgment.

■ "A trademark, even a registered one, is not a property right, like a copyright or patent, but merely an identifier of source." *Door Systems, Inc. v. Pro–Line Door Systems, Inc.,* 83 F.3d 169, 173 (7th Cir.1996). Nonetheless, trademarks may be protected under state and federal law. It is axiomatic that the right to a distinctive mark belongs to the person who first continuously uses the mark to identify or distinguish goods or services in commerce. "Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated." *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 503 (7th Cir. 1992). Trademark rights are acquired by adoption and use, not by registration. "Registration itself only establishes a rebuttable presumption of use as of the filing date." *Id.* at 504. Because plaintiff owns no federal registration for STEALTH in connection with computers or computer related goods, it must rely on common law rights to establish by a preponderance of the evidence that it made prior and continuous use of the STEALTH mark for computers and computer related goods. *See G. Heileman Brewing Co., Inc. v. Anheuser–Busch, Inc.,* 873 F.2d 985, 994 (7th Cir.1989).

The parties hotly dispute which company first adopted and used the mark STEALTH for computers and computer related goods. Even assuming that plaintiff made first use of the mark, defendants contend that plaintiff abandoned its rights in the mark by failing to continuously use it.

In support of its contention that it has acquired prior common law rights in the mark STEALTH for computers and computer related goods, plaintiff submits the following evidence:

- one undated laptop computer with the word STEALTH affixed to it in some manner;

- six invoices for STEALTH computers and computer software from 1986, 1987, and 1988 for sales totaling $5301.00;

- one 1986 invoice for a SENTRA computer totaling $2500.00;

- one 1989 acknowledgment that a specified person received two computers *not* designated as STEALTH;

- four advertising or distribution contracts with retailers from 1986, 1987 and 1989

- documents showing that Stealth Industries and Sentra imported computers and computer related products in the mid–1980's;

- computer product information from a foreign supplier sent to USA Import Co. in 1994;

- one 1988 catalog for STEALTH SENTRA sporting goods stating that purchasers of Stealth Industries' goods from January 1, 1988 to May 1, 1988 can earn points redeemable for prizes including a STEALTH computer;

- a 1995 brochure depicting STEALTH and SENTRA laptop computers stating "STEALTH ™ .... Brand computer products continuously since at least 1985";

- several dated and undated users manuals and computer specification sheets from 1985, 1987 and 1993;

- numerous licenses to plaintiff's related companies and licenses to unrelated companies for goods unrelated to computers;

- numerous settlement agreements from past trademark infringement actions for goods unrelated to computers brought by plaintiff or its related entities;

- two internal strategy memoranda from 1985 and 1986;

- handwritten spreadsheet showing: STEALTH SENTRA DARKSTAR computer products sales for 1992–1995;

- three solicitation letters to potential customers about STEALTH SENTRA computers and computer related products dated 1992, 1995 and 1996;

- the declaration of one of plaintiff's customers and

• the declaration of Leo Stoller.

■ Plaintiff also submits its 1990 application to register STEALTH for computer products. However, no rights are conferred by the mere filing of a federal trademark application and the applicant is entitled to no statutory presumption of entitlement until the registration issues. *See Hydro–Dynamics, Inc. v. George Putnam & Co., Inc.,* 811 F.2d 1470, 1472 (Fed.Cir.1987). Because the PTO declared plaintiff's initial application abandoned, and rejected its second application, S Industries may not rely on the applications here to establish priority in the mark. *See WarnerVision Entertainment Inc. v. Empire of Carolina Inc.,* 101 F.3d 259, 260 (2d Cir.1996); *WarnerVision Entertainment Inc. v. Empire of Carolina Inc.,* 915 F.Supp. 639, 38 U.S.P.Q.2d 1179, 1182 (S.D.N.Y.1996), *aff'd in part and rev'd in part on other grounds,* 101 F.3d 259 (2d Cir.1996).

■ Although plaintiff claims to have continuously used the STEALTH mark on computers and computer related goods since 1985, the evidence it provides clearly defeats its claim. Plaintiff produced eight invoices for sales in 1986–1989. Invoices alone cannot demonstrate trademark use. *See Dial–A–Mattress Operating Corp. v. Mattress Madness, Inc.,* 841 F.Supp. 1339, 1348 & n. 1 (E.D.N.Y.1994) (a few invoices insufficient to show priority of use); *The Boss Co. v. Homemaker Rugs, Inc.,* 117 U.S.P.Q. 255, 256 (N.D.Ill.1958) (invoices insufficient to establish trademark rights because plaintiff did not use the mark as a source identifier).

■ Six of the invoices do actually establish that plaintiff sold 5 computers designated as STEALTH and 29 units of software designated as STEALTH in 1986–1988. These sales totaled $5301.00. Nonetheless, these invoices, which show only de minimis sales in the late 1980's, do not support S Industries' contention that it continuously used the STEALTH mark since 1985. *See Zazu Designs,* 979 F.2d at 503 ("[a] few bottles sold over the counter in Hinsdale [Illinois] and a few more mailed to friends in Texas and Florida, neither link the ZAZU mark with [plaintiff's] product in the minds of consumers nor put other producers on notice"). Moreover, these invoices do not

establish that any goods bore the STEALTH mark as a source identifier.

The other two invoices provided by plaintiff are irrelevant. One 1986 invoice documents the sale of a *SENTRA* computer. The 1989 invoice is actually only an acknowledgment that a specified person received two computers. Not only does the 1989 invoice fail to identify the two computers as STEALTH, the recipient did not specify from whom the computers were received.

Furthermore, except for a handwritten spreadsheet purporting to show sales of STEALTH SENTRA DARKSTAR computers in 1992–1995, plaintiff has produced no valid evidence of any sales of its STEALTH computers or related products after 1988. The spreadsheet, however, is conclusory and S Industries provides no documentation to show to whom these sales were made or whether the goods were designated with the STEALTH mark.

Plaintiff's evidence of advertising is likewise insufficient to establish any consequential use, let alone continuous use, of the STEALTH mark. "Mere advertising of a product and documentary use of a symbol apart from the goods does not constitute trademark use." *Avakoff v. Southern Pacific Co.,* 765 F.2d 1097, 1098 (Fed.Cir.1985). *See also Paramount Pictures Corp. v. White,* 31 U.S.P.Q.2d 1768, 1773, 1994 WL 484936 (TTAB 1994) (de minimis advertising insufficient to establish continuous use). The 1988 catalog, which advertises STEALTH SENTRA *sporting goods,* merely notes that purchasers of Stealth Industries' goods from January 1, 1988 to May 1, 1988 can earn points redeemable for prizes including a STEALTH computers. The catalog does not confirm that any "STEALTH computers" were so designated or were introduced into commerce. Furthermore, plaintiff provides no affirmative evidence that it ever distributed or that potential purchasers ever received the 1988 catalog or the 1995 brochure it relies on to establish its right in the STEALTH mark for computers and related products. S Industries has likewise neglected to provide address lists or other proof that the three solicitation letters were ever

mailed. Just because plaintiff's 1995 brochure proclaims "STEALTH ™ .... Brand computer products continuously since at least 1985" does not make it so.

Similarly, even though plaintiff may have entered into advertising and distribution contracts with retailers in 1986, 1987 and 1989, plaintiff presents no evidence to show that the contracts were implemented or that the retailers ever advertised or distributed any STEALTH computers or related goods in the years designated or at anytime.

The single laptop computer produced by plaintiff with the STEALTH mark affixed in some manner is equally unhelpful to plaintiff. No evidence has been produced that demonstrates when or even if laptops bearing the STEALTH mark were sold or transported to purchasers in commerce. Moreover, S Industries' evidence does not establish that the laptops were available prior to defendants' use of the mark. Similarly, the manuals and specifications supplied by plaintiff are ineffective. Plaintiff has provided no affirmative evidence demonstrating that the manuals were supplied to purchasers at any time or that the products described in the manuals ever existed.

Indeed, the remainder of plaintiff's evidence is inconsequential. Licensing and settlement agreements for goods unrelated to computers and importation documentation do not establish that plaintiff actually used the STEALTH mark in connection with computers at any time. *See e.g. Avakoff*, 765 F.2d at 1098 (shipment from manufacturer to applicant does not constitute trademark use); *CTC Int'l. Inc. v. Hero Cycles Private, Ltd.*, 26 U.S.P.Q.2d 1309, 1312 (C.D.Cal.1992) (summary judgment granted because shipments from the manufacturer to the claimed trademark owner are insufficient to establish priority). Furthermore, Leo Stoller's self-serving affidavit, which has no factual support in the record, cannot defeat defendants' motion for summary judgment. *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993). The affidavit of an S Industries' customer also contains conclusory statements which do not substantiate the affiant's claim of long-time familiarity with plaintiff's STEALTH computer products. Finally, the internal strategy memoranda dated 1985 and 1986 merely demonstrate an intent to expand plaintiff's sales of STEALTH products into computers. However, "[j]ust as an intent to buy a choice parcel of land does not prevent a rival from closing the deal first, so an intent to use a mark creates no rights a competitor is bound to respect." *Zazu Designs*, 979 F.2d at 504.

In sum, the documentation supplied by plaintiff is woefully inadequate to support its § 1125 claims. The evidence does not remotely demonstrate that S Industries actively and continuously attempted to or succeeded in establishing a trade in computers and related goods under the STEALTH mark, let alone since 1985. Viewed in a light most favorable to plaintiff and making all inferences in its favor as we must, we find that plaintiff's evidence creates no triable issues of fact as to whether plaintiff has acquired protectable common law rights in the STEALTH mark for computers and computer related goods. Accordingly, summary judgment is granted in defendants' favor on Counts II and III.

## IV. Count IV: The Federal Dilution Act

Section 1125(c) of the Lanham Act, the Federal Dilution Act, provides remedies for the dilution of the distinctive quality of famous marks. To prove this claim, a plaintiff must show that its mark is famous and that the defendant's use of the same or similar mark creates a likelihood of dilution through tarnishment or blurring. *R.J. Corr Naturals, Inc. v. Coca–Cola Co.*, No. 97 C 1059, 1997 WL 223058, *8 (N.D.Ill.1997); *Intermatic Inc.*, 947 F.Supp. at 1238.

Defendants assert two grounds for summary judgment on Count IV. First, defendants contend that, as a matter of law, the Federal Dilution Act cannot be applied retroactively. Second, defendants claim that, as a matter of law, plaintiff's STEALTH mark is not famous and, thus, is not entitled to protection under the Federal Dilution Act. We agree with defendants.

Prior to the adoption of the Federal Dilution Act, a federal claim for use of a trademark could be brought only *if* the use caused a "likelihood of confusion" with a senior

user's mark. Under the Federal Dilution Act, however, once a mark is adjudged famous a senior user need only show that its mark is diluted or tarnished by the junior user's use of the same or similar mark. "Thus, the [Federal] Dilution Act significantly expanded the reach of the Lanham Act by creating new obligations, imposing new duties, and attaching new disabilities with respect to marks already adopted." *Circuit City Stores, Inc. v. OfficeMax*, 949 F.Supp. 409, 414 (E.D.Va.1996).

▪ Absent specific legislative direction, statutes are presumed to be applied prospectively. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf*, the Supreme Court refused to make a new statute, the Civil Rights Act of 1991, "applicable to conduct that occurred, and to cases that were filed, before the Act's effective date." 511 U.S. at 250. Moreover, the *Landgraf* Court found that a new provision which attaches new legal consequences to events completed before its enactment could not be applied retroactively. *Id.* at 270. Accordingly, the Federal Dilution Act, which contains no express retroactivity language, cannot be applied to conduct completed before its enactment on January 16, 1996. *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Dev. Corp.*, 973 F.Supp. 552, 557 (M.D.N.C.1997); *Viacom, Inc. v. Ingram Enter., Inc.*, 965 F.Supp. 1278, 1281 (W.D.Mo.1997); *Circuit City Stores, Inc.*, 949 F.Supp. at 415.

Here, plaintiff seeks to apply the Federal Dilution Act to conduct which began in 1991, well before the Act's effective date, but continues afterwards. Clearly, any alleged acts defendants committed before January 16, 1996 are not actionable. Therefore, we must determine whether the Federal Dilution Act applies to defendants' alleged use of the STEALTH mark after January 16, 1996.

▪ Because trademark rights accrue with selection and use of a mark, there is no way to effectively distinguish the time of adoption from the rights that accrue though continuous use. Thus, if the selection and adoption of a mark is lawful, its continued use cannot be interrupted by a law such as the Federal Dilution Act which imposes new legal duties, utilizes a new legal standard and crafts a new legal remedy. *Accord Resorts of Pinehurst, Inc.*, 973 F.Supp. at 559 (the Federal Dilution Act did not apply to ongoing conduct because the defendant completed its the selection and initial publicizing of its trade names well before enactment). Accordingly, if a defendant adopted and used a mark before January 16, 1996, the plaintiff's federal claims "must be measured under the law of infringement and the confusion standard, not under the dilution concept created by the [Federal] Dilution Act." *Id.* (citing *Circuit City Stores, Inc.*, 949 F.Supp. at 418–419).

▪ Diamond selected, adopted, and first used the STEALTH mark for its video and graphics computer boards in 1991. Relying on the law that existed in 1991, Diamond spent a significant amount of money publicizing its mark and sold millions of video and graphics computer boards bearing its STEALTH mark. Indeed, during the four year period before the Federal Dilution Act created a new claim, defendants used and promoted a valid legal mark. Defendants therefore 'completed' the section and publicizing of the mark prior to the enactment of the Federal Dilution Act. *See Resorts of Pinehurst, Inc.*, 973 F.Supp. at 558. It would be manifestly unfair to require Diamond to abandon its investment and accompanying goodwill associated with its name in light of a new law which departs from the traditional "likelihood of confusion" standard. Therefore, application of the Federal Dilution Act in this case would have an impermissible retroactive effect by "attach[ing] a new disability[ ] in respect to transactions or considerations already past." *Landgraf*, 511 U.S. at 270 (citations omitted). Defendants' purported conduct is not actionable under the Federal Dilution Act.

▪ In any event, plaintiff's STEALTH mark is not famous. To determine whether a mark is distinctive and famous, the court must consider factors such as:

(A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the

mark is used; (C) the duration and extent of the advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channel of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties; and (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(1)(A)–(H). Examples of marks found to be famous include: INTER-MATIC, *Intermatic Inc.*, 947 F.Supp. at 1239 (exclusive use for 50 years); TOYS "R" US, *Toys "R" Us, Inc. v. Akkaoui*, 40 U.S.P.Q.2d 1836, 1838, 1996 WL 772709 (N.D.Ca.1996) (exclusive use since 1960, extensive advertising of inherently distinctive mark); DON'T LEAVE HOME WITHOUT..., *American Express Co. v. CFK, Inc.*, 947 F.Supp. 310, 316 (E.D.Mich.1996) (exclusive worldwide use for 20 years, millions expended on advertising); and PANAVISION, *Panavision, Int'l. L.P. v. Toeppen*, 945 F.Supp. 1296, 1302 (C.D.Ca.1996) (continuous use since 1954 and extensive advertising generating daily public exposure to the mark).

Significantly, plaintiff never even alleges in its complaint or offers proof that its STEALTH mark is "famous" now or was "famous" before Diamond starting using the mark on its video and graphics computer boards in 1991. Nevertheless, plaintiff's STEALTH mark does not remotely meet the criteria of a famous mark.

S Industries' own use of the STEALTH mark has been adjudged by a federal court to infringe the STEALTH trademark owned by the Timex Corporation. *Timex Corp. v. Stoller*, 961 F.Supp. 374, 379–380 (D.Conn. 1997) (Timex awarded treble damages and reasonable attorney's fees from defendant Stealth Industries, but case settled during the appeal). Moreover, S Industries has not used the STEALTH mark for an extended time period like PANAVISION or TOYS "R"

US. Plaintiff has presented no evidence of any substantial publicity or advertising, other than two catalogs, a few advertising contracts with retailers, and three solicitation letters, to establish the extent to which plaintiff's STEALTH mark is recognized or promoted in the marketplace. Thus, as a matter of law, we find that plaintiff's evidence is insufficient to establish that its STEALTH mark is famous. Summary judgment on Count IV is granted in defendants' favor.

## V. Count V: The Illinois Consumer Fraud and Deceptive Trade Practices Act and The Illinois Uniform Deceptive Trade Practices Act

Claims under the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 et seq., and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., are resolved in the same manner as Lanham Act claims. *D 56, Inc. v. Berry's Inc.*, 955 F.Supp. 908, 920 (N.D.Ill. 1997). To prevail on Count V, S Industries must establish that it has a protectable mark, and if so, that defendants' use of the mark brings about a likelihood of confusion. *Thompson v. Spring–Green Lawn Care Corp.*, 126 Ill.App.3d 99, 104, 81 Ill.Dec. 202, 466 N.E.2d 1004, 1010 (1984). For the same reasons stated in Section III, *supra*, summary judgment is granted in defendants' favor on Count V.

## VI. Count VI: The Illinois Counterfeit Trademark Act

■ The Illinois Counterfeit Trademark Act, 765 ILCS 1040/1 et seq. prohibits the counterfeiting or imitating of a trademark by anyone other than the mark's rightful owner. After plaintiff filed this action, the Illinois General Assembly enacted an amendment on June 1, 1997 expressly repealing § 7 of the Act which allowed private civil actions. " '[T]he legislature has the power to withdraw jurisdiction of the courts over statutory causes of action and the exercise of that power leaves all such causes of action and pending suits where the repeal finds them.' " *Shelton v. City of Chicago*, 42 Ill.2d 468, 248 N.E.2d 121, 123 (1969) (citation omitted), *cert. denied*, 396 U.S. 906, 90 S.Ct. 222, 24 L.Ed.2d 182 (1969). *Accord Scott v. Mid-*

*west, Ltd.*, 933 F.Supp. 735, 736 (C.D.Ill. 1996). The bill repealing § 7 did not contain a savings clause. Moreover, the Statue Savings (1874) Act, 5 ILCS 85/2, which saves actions pending under specified repealed statutes, does not list the Illinois Counterfeit Trademark Act.

No Illinois court has addressed how the repeal of § 7 affects private civil actions pending under the Illinois Counterfeit Trademark Act. However, "where the legislature passes a repealing act and nothing is substituted for the act that is repealed, the effect is to obliterate such statute as completely as if it had never been passed." *Tyrrell v. Mun. Employees Annuity and Benefit Fund of Chicago*, 32 Ill.App.3d 91, 336 N.E.2d 97, 105 (1975). By repealing § 7, the Illinois General Assembly indicated that it no longer wanted private citizens to police the counterfeiting of trademarks. Rather, only criminal penalties remain and enforcement is now left exclusively to the State of Illinois. Thus, we find that Illinois courts would hold that the unconditional repeal of § 7 bars all private plaintiffs, including S Industries, from further pursuing private claims brought under the Illinois Counterfeit Trademark Act. Summary judgment is granted in defendants' favor on Count VI.

▮▮▮ Even if plaintiff's claim remained after the amendment, the claim would fail. In order to state its claim, plaintiff must show that defendants intended to deceive customers as to the source of Diamond's product. *Dorr–Oliver, Inc. v. Fluid–Quip. Inc.*, 894 F.Supp. 1190, 1204 (N.D.Ill.1995), *rev'd on other grounds*, 94 F.3d 376 (1996). Mere imitation is not enough. *S Indus. v. GMI Holdings, Inc.*, No. 96–C 2232, 1996 WL 526792, *4 (N.D.Ill.1996); *People v. Revlon*, 99 Ill.App.2d 463, 241 N.E.2d 554, 559 (1968). "S Industries must [prove] that defendants engaged in imitation in conjunction with other acts of misrepresentation and that the defendants intended to deceive the public by use of the word 'STEALTH.'" *S Indus.*, 1996 WL 526792, at *4 (S Industries' claim under the Illinois Counterfeit Act cannot survive even a motion to dismiss).

Here, plaintiff provides no affirmative evidence to establish that defendants intended

to deceive customers or that they misrepresented the source of Diamond's products. Indeed, nothing indicates that defendants' tried to pass off Diamond's goods as the goods of S Industries. Diamond's product is referred to as the "Diamond Stealth VRAM." *Eg.* Lynda Radosevich, *Windows on Fast Forward: Ratings Review*, Lotus, April 1992, at 84; Winn L. Rosch, *Graphics Accelerators: Pump up the Power*, PC Magazine, March 17, 1992 at 364; Oscar Rojo, *Sales Increases Lead to Expansions for Office Systems Firm*, Toronto Star, February 10, 1992, at B3; *see also* Affidavit of plaintiff's customer, Pl.Ex. C20 (refers to the "Diamond STEALTH video card 3–D 2000"). Thus, plaintiff's claim under the Illinois Counterfeit Trademark Act cannot survive defendants' motion for summary judgment.

## VII. Plaintiff's Cross Motion for Summary Judgment

In its cross motion for summary judgment, plaintiff contends "that it is clear beyond reasonable dispute that Plaintiff has priority of use of its mark STEALTH as a trademark, trade name, 'house mark' and service mark over Defendants.... on a wide range of consumer products, including computer hardware, computer software and related computer products...." (Pl. Resp. and Cross Motion for S.J., p. 7). Plaintiff requests summary judgment on Counts I – III and V – VI. For the reasons stated above, see Sections II, III, V and VI *supra*, plaintiff's motion is denied.

## VIII. Attorney's Fees

▮▮▮ The Lanham Act authorizes an award of attorneys' fees to the prevailing party in a trademark dispute "in exceptional cases." 15 U.S.C. § 1117. The matter is within the district court's discretion and the standard is "a generous one." *FASA Corp. v. Playmates Toys, Inc.*, 108 F.3d 140, 143 (7th Cir.1997). Bad faith is not the correct standard for determining whether a case is extraordinary. Rather "the canonical formula in this and other circuits is 'malicious, fraudulent, deliberate, or willful.'" *Door Systems, Inc. v. Pro–Line Systems, Inc.*, 126 F.3d 1028, 1031 (7th Cir.1997). The Illinois Consumer Fraud and Deceptive Trade Prac-

tices Act also authorizes the court to award reasonable attorney's fees and costs to a prevailing party. 815 ILCS 505/10a(c); *Door Systems, Inc.*, 126 F.3d at 1029–1030.

■ S Industries' claim of actual infringement of its registered marks, Count I, crosses the border of legal frivolousness, as its § 1114 claim utterly lacks merit on its face. The claims made by plaintiff are unsupportable and even a cursory examination of the law demonstrates that fact. Plaintiff's claim under the Federal Dilution Act, Count IV, is not only poorly drafted, but frivolous as well. In its complaint, plaintiff never alleges that its STEALTH mark is famous, the essential element necessary to support its dilution claim, and supplies no evidence to show that its STEALTH mark is famous now or when Diamond first used the mark. As the prevailing parties, therefore, the Court awards defendants the reasonable attorneys' fees and costs incurred for the defense of Counts I and IV. Additionally, as the prevailing parties on Counts II, III, and, V, the Court invites defendants to submit a petition for the fees and costs incurred for the defense of these counts. Count VI is brought under the Illinois Counterfeit Trademark Act which does not authorize this Court to award fees and costs.

Defendants have until February 13, 1998 to file a bill of fees and costs for Counts I and IV (see Local Rules 46 and 47) and any petition regarding Counts II, III and V. This Court will deem the failure to file the bill of fees and costs or the petition by the deadline as a waiver of defendants' right to fees and costs.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on plaintiff's second amended complaint is granted. Plaintiff's cross-motion for summary judgment on Counts I–III and V–VI of its second amended complaint is denied. The defendants are directed to file their bill of fees and costs for the defense of Counts I and IV and any petition regarding Counts II, III, and, V by February 13, 1998. All other pending mo-

tions are moot. This is a final appealable order.

It is so ordered.