**S INDUSTRIES, INC., a Delaware Corporation, Plaintiff,**

v.

**DIAMOND MULTIMEDIA SYSTEMS, INC., d/b/a/ Diamond Computer Systems, Inc., Micron Electronic, Inc., Zeos, Computer City, Inc., Comp USA, Elek–Tek, Circuit City, Best Buy, and Egghead Software, Defendants.**

No. 96 C 3389.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 19, 1998.

claims in this case.

John Valas, Chicago, IL, for Plaintiff S Industries, Inc.

Andrew P. Bridges, Sara Harrington, Diane E. Turriff, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, David C. Hilliard, John Thompson Brown, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for Defendants Diamond Multimedia Systems, Inc., Micron Electronics, Inc., Computer City, Compusa, Elek–Tek, Circuit City, Best Buy and Egghead Software.

## MEMORANDUM OPINION AND ORDER

WAYNE R. ANDERSEN, District Judge.

As the prevailing parties, Defendants petition the Court for the attorneys' fees and costs incurred in defending this lawsuit. For the following reasons, the petition is granted.

### I. BACKGROUND

The facts of this lawsuit are more fully set out in the Court's January 20, 1998 Memorandum Opinion and Order. *S Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F.Supp. 1012 (N.D.Ill.1998). On June 5, 1996, S Industries filed suit against Diamond Multimedia Systems, Inc. ("Diamond") and Diamond's customers Micron Electronic, Inc., Zeos, Computer City, Inc., COMPUSA, Elek–Tek, Circuit City, Best Buy, and Egghead Software (collectively the "Defendants") alleging infringement of its purported STEALTH mark for computers and computer related goods.

In its second amended complaint, S Industries brought claims under the Lanham Act for infringement of a registered trademark (Count I), false designation of origin (Count II), unfair competition (Count III), and dilution (Count IV). Additionally, S Industries alleged state law claims under the Illinois Consumer Fraud and Deceptive Trade Practices Act and the Illinois Uniform Deceptive Trade Practices Act (Count V) and the Illinois Counterfeit Trademark Act (Count VI).

On January 20, 1998, we granted summary judgment in favor of Defendants and denied

the cross motion of S Industries for summary judgment. *Diamond Multimedia Sys., Inc.,* 991 F.Supp. at 1023–24. Additionally, we awarded Defendants the reasonable attorneys' fees and costs incurred for the defense of Counts I and IV. *Id.* As the prevailing parties on Counts II, III, and, V, we invited Defendants to submit a petition for the fees and costs incurred for the defense of these counts. *Id.* at 1024. State law did not authorize Defendants to receive fees and costs for Count VI. *Id.*

As instructed, Defendants timely submitted a petition for fees and costs for Counts II, III, and V along with supporting declarations and schedules of fees and costs for Counts I—V. S Industries objects arguing that the fees are neither warranted nor reasonable.

## II. FEES AND COSTS ARE WARRANTED ON COUNTS II, III AND V

The Lanham Act authorizes an award of attorneys' fees to the prevailing party in a trademark dispute "in exceptional cases." 15 U.S.C. § 1117. The Illinois Consumer Fraud and Deceptive Trade Practices Act also authorizes the court to award reasonable attorneys' fees and costs to a prevailing party. 815 ILCS 505/10a(c); *Door Systems, Inc. v. Pro–Line Systems, Inc.,* 126 F.3d 1028, 1029–30 (7th Cir.1997) (citations omitted). The matter is within the district court's discretion and the standard is "a generous one." *FASA Corp. v. Playmates Toys, Inc.,* 108 F.3d 140, 143 (7th Cir.1997).

■ Under the Lanham Act and the Illinois Consumer Fraud and Deceptive Trade Practices Act, fees may be awarded to a prevailing defendant if the plaintiff's suit can fairly be regarded as oppressive. *Door Systems, Inc.,* 126 F.3d at 1032. Bad faith is not the correct standard for determining whether a case is exceptional. Rather "the canonical formula in this and other circuits is malicious, fraudulent, deliberate, or willful." *Id.* at 1031 (citations omitted).

We have already held that Counts I and IV are oppressive. *Diamond Multimedia Sys., Inc.,* 991 F.Supp. at 1023–24. S Industries

argues that Counts II, III, and V, and this lawsuit generally, are not oppressive "because there is no evidence that S Industries brought these counts or this action for any purpose other than the legitimate desire to preserve S Industries' rights to use the mark which is subject of this suit. . . ." (Response to Defs. Petition for Fees, p. 5). S Industries' assertion is unpersuasive. "A suit can be oppressive because of lack of merit and cost of defending even though the plaintiff honestly though mistakenly believes that he has a good case and is not trying to merely extract a settlement based on the suits nuisance value." *Door Systems, Inc.,* 126 F.3d at 1032.

■ Claims for unfair competition under the Illinois Consumer Fraud and Deceptive Trade Practices Act are resolved in the same manner as Lanham Act claims. *D 56, Inc. v. Berry's, Inc.,* 955 F.Supp. 908, 920 (N.D.Ill. 1997). To have prevailed under these Acts, S Industries had to establish that it has a protectable mark, and if so, that Defendants' use of the mark brought about a likelihood of consumer confusion. *Dunn v. Gull,* 990 F.2d 348, 351 (7th Cir.1993); *Thompson v. Spring–Green Lawn Care Corp.,* 126 Ill. App.3d 99, 104, 81 Ill.Dec. 202, 466 N.E.2d 1004, 1010 (1984).

■ It is axiomatic that the right to a distinctive mark belongs to the person who first continuously uses the mark to identify or distinguish goods or services in commerce. "Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated." *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 503 (7th Cir.1992). Trademark rights are acquired by adoption and use, not by registration.

■ S Industries' claims of unfair competition under both the Lanham Act (Counts II and III) and the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count V) are oppressive. These causes of action were not grounded on a plausible theory of ownership, let alone one even remotely supported by the law or the scant evidence presented by S Industries. S Industries' original complaint made no allegation that it used the

STEALTH mark on computers and computer related goods. (Original Complaint, ¶¶ 14, 16). Although, S Industries amended its complaint to remedy this crucial omission, the evidence put forth by S Industries to support its claim that it actively and continuously attempted to or succeeded in establishing a trade in computers and related goods under the STEALTH mark is so inadequate as to be oppressive. *See Diamond Multimedia Sys., Inc.,* 991 F.Supp. at 1017–20.

To support its claim of continuous use, among other inadequate evidence, S Industries relied on an abandoned trademark application and a rejected trademark application for STEALTH in connection with computers and computer related goods and eight invoices showing de minimum sales of computers and related goods in the late 1980s. Not surprisingly, one of these invoices documents the sale of a computer designated with the SENTRA rather than STEALTH mark and another invoice fails to identify the computers sold by any mark whatsoever. Significantly, S Industries submitted no valid evidence of any sales after 1988 even thought it repeatedly claimed continuous use through at least 1996. To bring a cause of action based on evidence of this sort, and to require Defendants to defend such a claim, is not only oppressive, but also inappropriate, frivolous, and, sanctionable.

Throughout the litigation, S Industries has exhibited conduct which increased the cost and burdensome nature of this lawsuit. To provide evidence of consumer confusion and continuous use, S Industries submitted the affidavit of David Todoroff ("Todoroff"), an S Industries customer who purportedly purchased STEALTH brand computers. Todoroff, however, deliberately thwarted Defendants' attempts to serve a deposition subpoena. Incredibly, S Industries' lawyer apparently refused to provide Defendants' attorneys with any contact information for Todoroff and counseled him not to cooperate with Defendants' service attempts. Defendants were ultimately unable to serve the subpoena. (Ron Lamb Aff., ¶¶ 4–7).

In its opposition to the instant motion, S Industries characterizes this lawsuit as an effort to police its STEALTH mark. Although policing a valid mark is not oppressive in and of itself, S Industries is not the typical trademark owner seeking to preserve its intellectual property rights. *S Indus., Inc. v. Hobbico, Inc.,* 940 F.Supp. 210, 211 (N.D.Ill.1996) (Judge Shadur finds that "S Industries, Inc. . . . appears to have entered into a new industry—that of instituting federal litigation"). Indeed, in one of S Industries' recent "policing" attempts, Judge Castillo granted summary judgment against S Industries and awarded attorneys' fees and costs to the Defendants noting that, "[t]his Court can think of few suits more oppressive, or few cases more exceptional than this." *S Indus., Inc. v. Stone Age Equipment, Inc.,* No. 96 C 4591, 1998 WL 341626, *24 (N.D.Ill. June 24, 1998). In that case, S Industries' conduct and litigation tactics, and even some of the evidence, resemble its actions and submissions in the instant lawsuit. Apparently, Todoroff purchases a wide-variety of S Industries' products and is happily willing to provide testimony in S Industries' lawsuits. In the instant suit, Todoroff's affidavit, which is dated September 17, 1997, states that he is a "self employed business man" having longtime familiarity with S Industries' STEALTH brand computer products. (Todoroff Aff, p. 1). In *Stone Age Equipment, Inc.,* 1998 WL 341626, at *13, Todoroff submitted an affidavit dated December 17, 1997 in which he claims that he is a professional tennis instructor and business owner who purchased a number of sporting goods, including "STEALTH brand shoes." In both cases, Todoroff failed to provide proof to substantiate the claims in his affidavits. *Id.; Diamond Multimedia Sys., Inc.,* 991 F.Supp. at 1020.

Here, S Industries' inability to muster proper evidence to support its claim of ownership, its refusal to assist with, and active obstruction of, Defendants' attempt to serve Todoroff, and its filing and active pursuit of frivolous claims easily brings this lawsuit into the realm of the oppressive. Moreover, even though the instant action is patently frivolous, S Industries entangled eight retail customers of Diamond in this litigation thereby threatening Diamond's business and increas-

ing the likelihood of extracting a settlement. S Industries has apparently taken a legitimate procedure designed to protect trademark rights and turned into a means of judicial extortion. Accordingly, Defendants are entitled to recover the reasonable attorneys' fees and costs associated with Counts II, III and V.

## III. CALCULATION OF FEES AND COSTS

Defendants seek $193,558.25 in attorneys' fees and $22,349.00 in costs. Defendants submitted a schedule of these fees and costs consistent with the requirements in this District. *See In re Continental Ill. Securities Litigation,* 572 F.Supp. 931 (N.D.Ill.1983). Defendants, however, did not submit each individual time entry due to attorney-client privilege concerns. Nonetheless, the format of the petition sufficiently demonstrates that the fees and costs were recorded chronologically and that counsel careful reviewed the legal bills and allocated each fee and cost to specified task and time categories. In addition, Defendants provided sufficient proof of the expertise of their counsel.

 S Industries contends that the fees and costs incurred by Defendants are excessive. We disagree. S Industries' own inefficiencies such as serving three separate complaints and filing extensive discovery requests to each of the nine defendants contributed to the fees and costs incurred. Furthermore, had S Industries screened out is most frivolous claims, such as infringement of a registered mark (Count I) and dilution of a famous mark (Count IV), it would have alleviated Defendants' need to incur fees and costs related to such claims.

Defendants, on the other hand, have conducted the litigation in an efficient manner. Although several of the nine defendants engaged their own counsel in the initial stages of the lawsuit, early on they decided to coordinate the defense and appointed one legal team to handle the lawsuit. Diamond's counsel, Wilson Sonsini Goodrich & Rosati and Chicago local counsel Pattishall, McAuliffe, Newbury, Hilliard & Geraldson were chosen. Given the geographic scope of the lawsuit and Defendants' potential liability, a single legal team was an efficient and cost effective means of defending this lawsuit. Furthermore, Defendants' decision to seek summary judgment before incurring extensive and expensive discovery is commendable.

We have examined the hours expended by Defendants' attorneys in defense of this lawsuit and find that they are reasonable. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991). Defendants made a "good-faith effort to exclude from [their] fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." *Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933. *Accord Harris Custom Builders v. Hoffmeyer,* 90 C 741, 1995 WL 437494, *11 (N.D.Ill. July 25, 1995). Furthermore, in light of their vast experience in the intellectual property field, we think the hourly rates charged by Defendants' counsel are fair. Likewise, we find that Defendants' request for costs is reasonable. Defendants counsel kept computer research fees, photocopying charges, and other costs to a minimum. Moreover, travel costs are reasonably incurred when out-of-state parties, such as Diamond, are sued in a far away forum. S Industries has presented no credible objection to the accuracy of the records of fees and costs. Moreover, S Industries presented no viable argument disputing the reasonableness of the fees and costs.

For all the foregoing reasons, we find that Defendants have adequately demonstrated that the requested fees and costs are reasonable and were actually incurred.

## IV. COUNT VI: THE ILLINOIS COUNTERFEIT TRADEMARK ACT

The Illinois Counterfeit Trademark Act (Count VI) does not authorize the Court to award fees to the prevailing party. *Diamond Multimedia Systems, Inc.,* 991 F.Supp. at 1023. Nonetheless, considering the factual circumstances of this case, we find that the mere filing of Count VI unduly harassed Defendants and needlessly increased the cost of this litigation.

■ In order to state its claim under the Illinois Counterfeit Trademark Act, S Industries needed to demonstrate that Defendants intended to deceive customers as to the source of Diamond's product. *Dorr–Oliver, Inc. v. Fluid–Quip, Inc.*, 894 F.Supp. 1190, 1204 (N.D.Ill.1995), *rev'd on other grounds*, 94 F.3d 376 (1996). Mere imitation is not enough. *S Indus., Inc. v. GMI Holdings, Inc.*, No. 96 C 2232, 1996 WL 526792, *4 (N.D.Ill.1996); *People v. Revlon*, 99 Ill. App.2d 463, 241 N.E.2d 554, 559 (1968). Thus, to prevail, "S Industries [had to show] that [D]efendants engaged in imitation in conjunction with other acts of misrepresentation and that the defendants intended to deceive the public by use of the word 'STEALTH'." *GMI Holdings, Inc.*, 1996 WL 526792, at * 4 (finding that S Industries' claim under the Illinois Counterfeit Act cannot survive even a motion to dismiss).

Before bringing Count VI, S Industries was obligated to verify that its factual contentions had evidentiary support. Fed. R.Civ.P. 11(b)(3). Even a cursory pre-filing investigation, however, would have revealed that Defendants never misrepresented the source of Diamond's product and never intended to deceive consumers. Indeed, nothing indicates that Defendants' tried to pass off Diamond's goods as the goods of S Industries. Diamond's product is consistently referred to as the "Diamond Stealth VRAM." *Eg.* Lynda Radosevich, *Windows on Fast Forward; Ratings Review*, Lotus, April 1992, at 84; Winn L. Rosch, *Graphics Accelerators: Pump up the Power*, PC Magazine, March 17, 1992 at 364; Oscar Rojo, *Sales Increases Lead to Expansions for Office Systems Firm*, Toronto Star, February 10, 1992, at B3. Significantly, Todoroff, S Industries' own witness, even refers to Diamond's product as the "Diamond STEALTH video card 3–D 2000." (Todoroff Aff., p. 1).

Accordingly, pursuant to Rule 11(c), S Industries and S Industries' counsel, John Valas, are each hereby ordered to show cause why each of them has not violated Rule 11 with respect to Count VI. S Industries and Mr. Valas are each ordered to file any opposition to the imposition of Rule 11 sanctions by August 26, 1998. Courtesy copies must be submitted to Chambers. Both S Industries and Mr. Valas are hereby ordered to appear before this Court on September 2, 1998 at 8:00 am. After S Industries and Mr. Valas respond, if the Court believes Rule 11 sanctions are appropriate, S Industries and Mr. Valas will be required to pay to Defendants the fees and costs incurred for the defense of Count VI.

Count VI required a minimum defense effort because the Illinois General Assembly expressly repealed the statutory provision upon which S Industries' claim was founded. Due to the complexity and interrelatedness of the remaining counts, however, almost all of the fees were incurred in connection with the defense of Counts I–V. Until the Rule 11 issue is resolved, we will reduce the fees and cost awarded to Defendants by five percent or $10,795.35.

## V. CONCLUSION

In the Memorandum Order and Opinion dated January 20, 1998, the Court already awarded Defendants the fees and costs incurred in defense of Counts I and IV. Defendants petition for fees and costs on Counts II, III, and V is granted. The Court awards, and S Industries is hereby immediately ordered to pay, Diamond $205,111.90 for the defense of Counts I–V.

As to Count VI, Mr. Valas and S Industries are each hereby ordered to show cause why they have not violated Rule 11. S Industries and Mr. Valas are each ordered to file any opposition to the imposition of sanctions under Rule 11 by August 26, 1998. Courtesy copies must be submitted to Chambers. S Industries and Mr. Valas are each hereby ordered to appear before this Court on September 2, 1998 at 8:00 am. After reviewing the response to the rule to show cause, the Court will determine whether Mr. Valas and S Industries must pay the remaining $10,795.35 requested by Defendants.

A copy of the January 20, 1998 Memorandum Opinion and Order granting Defendants' motion for summary judgment and denying S Industries' cross motion for summary judgment and a copy of the instant Memorandum Opinion and Order will be submitted to the Executive Committee with the suggestion

that it review the admission of John Valas to practice law before the United States District Court for the Northern District of Illinois.

It is so ordered.